Good morning, Greg McGilvery from Woodlane McGilvery on behalf of the appellants. This case presents an issue of first impression for the court. How does the constitutional right to interstate travel among the 50 United States limit the powers of the federal government? The district court correctly held that the federal government cannot infringe the constitutional right to interstate travel absent a compelling governmental interest. Thus, the question is what does the constitutional right to interstate travel mean as applied to the federal government? What limitations and obligations does that right place on our federal government? Although the lower court got it right that the right to interstate travel applies to the federal government, it stumbled when it tried to examine what that right means. Instead of examining or engaging in a thorough examination of what it means to apply to the federal government, the lower court mechanically applied the three-subcomponent test set forth in signs, which defines the limitations on state governments, not federal governments. The Supreme Court case law on the right to interstate travel has been developed almost exclusively in the context of state laws that impact the right to travel. It's not surprising And what is it that holds up the right to the federal government? In signs, the court addressed that issue because the federal government was trying to authorize or empower the states to violate the right to travel and the federal government, excuse me, the Supreme Court held that the right to travel limits the federal government as well as the states. And as Judge Proe stated in his decision, there are a number of other reasons that would justify applying it to the federal government. Does the same analysis apply to the federal government? The analysis is different, and that's really, Judge Bivey, the crux of this case. The analysis has to be different. The states The United States was not a party to SANES. No, but the statute at issue in SANES authorized the states to develop a scheme with respect to welfare that would permit them to provide the same benefits that the individual state they were coming from would provide. And so the state of California argued, well, the federal government has enacted a statute that authorizes us to do this. And so the Supreme Court analyzed that and determined that this right, this fundamental right in the Constitution cannot be violated by the federal government, and it cannot authorize the states. But that's quite different from saying if you have a state constitutional violation, the federal government has no power to undo the violation or authorize something which is constitutionally prohibited. It's quite different to hold that the United States itself can violate that this is a right that runs against the United States. I mean, there are two different concepts. I'm not sure how in a case where the United States is not a party and the United States is not accused of itself committing a violation of the interstate travel, how the court can speak. I thought they would agree on whether or not the right applies to the federal government. Can we look at the language that you rely on specifically in SANES? In SANES, the court mentioned that the federal right to travel is deeply rooted, the interstate right to travel is deeply rooted in the citizenship clause of the 14th Amendment, which is applicable to the federal government as well as the states, and that it's derived from the concept of a nation being comprised of a unified whole of 50 states. And the court went on to state that... There's one sentence there that says that without any citation or analysis or anything of that sort. Well, the court described the right to interstate travel as virtually unqualified federal citizens' right to go and reside in any state he chooses. And as a right necessary to the federal structure of the nation, the court made it clear that a U.S. citizen must be able to move freely among the 50 states without being treated as a second-class citizen or being punished for moving. And as a federal right, which Judge Proulx recognized, I mean, as a fundamental constitutional right, it would be incongruous if the right to travel existed for international travel, for example, which everyone recognizes a lesser constitutional liberty than the right to interstate travel, yet the federal government would be free to violate the... Or the right to interstate travel would not apply to the federal government within the 50 states with respect to interstate travel. I don't see what's incongruous about it at all. I mean, it's one thing to say, look, states can't discriminate against citizens of other states. They can't sort of bar... You know, you want to go from, you know, Georgia to California, Oklahoma can't sort of stand in the way and say you can't pass through here. Or California can't say we don't like Oklahomans and, you know, we don't want them coming to the United States. But because those are interests, those are states exercising the regional interests against other regions of the United States. But the national governments act as a consensus. It has the votes and the... Of course, the vote of senators and members of Congress from all states. And the legislation is normally signed by the president who is elected by, you know, the people as a whole. So it's a very different question, the question of whether the federal government, you know, this right runs against the federal government. It doesn't pose the same kind of danger. The same thing is true as far as the foreign travel. The United States has particular powers in dealing with foreign travel, which the states don't have. So there are certain limitations on that power. But I don't see where they're congruent. Well, I think they're incongruent because you're assuming that the federal government... ...decides and singles out individual states, in this case, of course, Hawaii and Alaska, for different treatments solely based on the identity of the state at issue. It affects interstate travel among the different states. They've been identified by state name. So you've got... Sure, the political system will protect... You've got, for example, the commerce clause. There are certain things that states can't do in discriminating against certain kinds of... They can't pass certain kinds of regulations. But there are also things the federal government can do, a lot of stuff that the federal government can do, that states simply can't do because it impedes interstate travel. So, you know, if a state adopts a particular regulation for trucks going across an interstate highway, they have to sort of change mudflaps in the middle of the trip. But the federal government is not constrained from adopting national regulations on mudflaps, for example. The difference is they're nationwide regulations. Just like this locality pay statute, it's nationwide, rest of the U.S., except for Hawaii and Alaska. That's the difference, Your Honor. The distinction, Judge Kaczynski, is that they've identified states by name, and that's the only difference in the treatment. There's no compelling justification that's been provided whatsoever by the federal government. If you're right about the locality pay act, doesn't that also mean that the COLA is unconstitutional? The COLA, absent a compelling justification, might well be unconstitutional. All these years, the law which has been favorable to Hawaiians and Alaskans has been unconstitutional. Well, I don't know that it is. I don't know that they couldn't meet the compelling justification standard. The record when the COLA law was enacted was very complete as to what its purpose was. But your position would be that we would have to examine the COLA, any challenge to the COLA under some form of strict scrutiny, something higher than rational basis? That's correct, Your Honor. That's correct. And I think these two statutes, we look for other statutes that identify and single out states for different treatment with respect to benefits, et cetera. You can't find any statutes like that. I mean, at least we couldn't find any. The government hasn't cited any. So although if you rule in our favor, it'll certainly be of major precedential value. In this case, it won't have a major practical value because in our state... Are you trying to go back and pay back in taxes what they earned, all the difference they earned, by way of this favor is not taxed all these years, go back and say, okay, we will now treat that as taxable income and be treated just like the rest of the country and pay taxes on that amount? Well, I mean, first of all, you're assuming there isn't a compelling justification for having treated the people in Hawaii and Alaska receiving COLA. I mean, the Congress had a very detailed record when they enacted COLA as the need for recruitment and retention, the need for the people in these outlying islands to receive this to attract a workforce out here, which of course, as the record reflects, is no longer working as well. But that's very different than in this situation, in the locality pay statute. There's no justification given whatsoever for why Hawaii and Alaska were treated differently. I understand this is sort of skipping ahead and assuming. What I'm saying, assuming you win, would the remedy be that they go back and they pay taxes on all those years they do tax-free income? For locality pay? Yeah. They would pay taxes on locality pay, sure, if they were received. They go back and pay taxes on all the years they got locality pay tax-free? That's a COLA. No, that's COLA. A COLA. COLA is tax-free. I don't know what the remedy would be. COLA is taxed, right? COLA is not taxed. Okay, I'm sorry. Because it's an allowance. It's defined by law as an allowance. Your clients get COLA and they want locality pay. Right. Okay, I'm sorry. Like the rest of the U.S. So would they go back and pay taxes on all the years they got COLA? Well, why would they pay taxes on COLA if we won the locality pay? You're saying if somebody challenged the COLA statute and found that out. You think your clients should have gotten locality pay and should be getting locality pay, right? Well, there should at least be a study done under the locality pay statute which identifies, I mean, Judge Crowe himself identified that perhaps in the jurisdictional decision, we don't know if they have the pay deferential because there hasn't been a study done. But ultimately. Assuming they did. So ultimately, when this comes to an end, what you want is you want your clients to get locality pay so that their three highest years will come towards their pensions, right? Well, that would certainly be one thing they would want to get. And still get COLA pay? Well, that would be up to Congress if they still got COLA pay. Now, in the rest of the U.S., they're not interchangeable. I mean, I know it's hard to resist the urge to think they are. But they are not interchangeable. They have very different purposes. For example, in D.C., which is what the COLA rates are based on, or what are federal employees' basic pay in D.C. It's supposed to bring them up to the basic pay for D.C. employees. Then on top of that, D.C. employees receive locality pay on top of their basic pay. But that's not taken into account in calculating the rate at which COLA is paid to federal employees in Hawaii and Alaska. Do you understand that? So, in other words, the basic pay in Hawaii and Alaska is supposed to be equivalent with COLA to the basic GS pay that employees in D.C. receive. I'm sorry. The GS-15 Step 1 in Honolulu is different from GS-15 Step 1 in D.C.? A GS-15 Step 1 in D.C., their pay rate is with cost of living in consideration. No, no. Forget about cost of living. GS-15 Step 1... They're the same. They're the same. They're the same. They're the same. So on top of that, folks in D.C. get... Locality. Locality pay. Correct. And whereas the GS-15 Step 1 in Honolulu gets the same salary, plus gets COLA on top of that. And you may think, gee, that seems good enough to me, but the fact is the cost of living in Hawaii and Alaska are 25% higher than the cost of living in D.C. That's why they receive COLA, to bring them up to the cost of living in D.C. So at the same pay, the GS-15 Step 1 is living the same... Without locality pay, would have the same purchasing power, if you will, as the GS-15 Step 1 in Honolulu with COLA. But then the person in D.C. gets locality pay on top of that. That's the disparity. Do you follow that, Judge Kuczynski? Well, I do follow what you're saying, but I just don't see the morass. Well, let's say the entire country were... They did away with the two-tier system. You would be making... That's the question that's probably asked. We'd be here adjudicating in the federal courts whether or not the locality pay level was quite enough and you'd come in and show evidence of it. No, that's not true. Why wouldn't that be the case? Because the reason we're attacking the statute on the constitutional right to travel is because they singled out these states without any justification, let alone a compelling justification, for different treatment. But you make the same argument. You say, oh, well, look at us. We're singled out because people in D.C. are getting much better calculations and we're singled out because when you calculate it out, our purchasing power is much lower than D.C. And then the people from Alabama will come and they say, but our purchasing power is even lower when you adjust for everything. No, that parade of horribles is not what we're arguing, Judge Kuczynski. Well, Congress could change this, and you've made efforts to change this, but they've not been successful. And if the court were to determine that this particular statute violated the right to travel and was unconstitutional, then they'd have to do something. Correct. Correct. And they would be limited in the future from singling out states. I'm guessing the legislators from Alaska and Hawaii fought very hard to keep the current system and not include... My guess is most federal employees are very happy to get 25% of pay without paying federal taxes. That's incorrect, Your Honor, and particularly as they near retirement. I mean, I've been at the meetings with them, et cetera, as they near retirement, as we said, they leave here. Sure, of course, as they near retirement, they've sort of gotten all this tax-free money for all these years and now they say, well, now I wish... But it doesn't mean that, looking forward, if you have a career in the federal government plan, that most employees wouldn't plan to take the upfront tax-free money now and worry about... The best of all worlds, of course, is to get tax-free money now and then in the last three years to switch over and get locality pay, and that both gives you tax-free money while you're working and heightened retirement when you go to retire. If I could just address the one point about the fact that everyone will be suing because of different rates, that's not what we're saying. We agree that if a statute like the locality pay statute does throughout the 48 states has a formula or a system, that's obviously constitutional if it's not based on what state you live in. Well, you can't speak for lawyers in other states or other lawyers in this state. If I was a judge and they sued on that, I wouldn't mind it. You're conceding then that the Constitution doesn't require a person residing in a particular state to receive the same federal employment benefits that he would receive in another state? No, they just have to apply the same formula. That's the difference. They would do a study and look at what the locality pay statute, the structure, would provide for them. That's all. Where do you get the idea of the same formula? Because there's a detailed formula for how... No, no, no, but where does the constitutional requirement for a same formula come from? Well, there's no constitutional prohibition for that. There's a constitutional prohibition from singling out states for different treatment because that, as we argue, violates the constitutional right to interstate travel. Well, even if it applies to the federal government, if different treatment is not enough, it has to be treatment that's different and worse and so disfavored as to burden the right to travel. Right. And it's not clear to me that some say having the same formula all over the country is the... I mean, what is the idea that having the same formula all over the country avoids that problem? One could just as well say, well, you know, we want to tackle a lot of young workers, and the idea of having 25% of your pay come in tax-free is a big incentive for people to come to Hawaii and Alaska early in their career because if they are working in San Francisco, their entire salary gets taxed and gets put in the way. Whereas if you go to Honolulu, 25% tax-free. What a deal. Well, it all comes back, also, if you could prove the government actually had a compelling justification. If there was a compelling justification to have younger workers putting aside the age discrimination problems that might cause... No, it's only... you need a compelling justification if you show that there is discrimination that burdens the right to interstate commerce. I'm suggesting to you that you may well have different systems and different formulas, but not necessarily a burden. It may be a burden for some, it may be a burden for older workers, but it may not be a burden for... but it may actually be an incentive for younger workers. It's a much better deal to work in Hawaii or Alaska because I get all this tax-free money. Well, the record is actually virtually undisputed that there is an impact on the workers. I mean, the government didn't dispute that, that people move and that it acts as a penalty if you move to Hawaii and Alaska from the 48 states, which is what the right to travel analysis requires. Is there some penalty or change in circumstances? Even if you're 25 and just starting in the federal government and you have a job in San Francisco, GS 13, Step 1, and you have to pay 32% locality pay, and you say, well, when I take home, if I go to move to Honolulu or to Ohio or one of those places, or to Fairbanks or Nome or someplace like that, I get almost the same salary. I get 25% instead of 32% extra. But it's all, the difference is all tax-free. I can spend it all. The difference, Your Honor, is you're ignoring the cost of living. When someone moves somewhere, they don't ignore the cost of living where they're moving. They don't move in a vacuum. But they also don't ignore the take-home pay. You want to say, well, they ignore the take-home pay, but what people really look at is the question of, I have the cost of living, I'm going to see how much I take home. And seeing how much I take home, the fact that I get 25%, I don't have to pay taxes on, is a big plus. Well, the only thing in the record is that it's burdensome. It was undisputed in the record that it burdened these employers. Counsel, do you have any evidence in the record that would sort of show, give us a comparison between, let's say, Honolulu and Washington, D.C. over time to show us what happens in the early stages when one's under COLA and somebody else is under locality pay and what happens as they get closer to retirement age? Working with the time value of money so that we could see what happens to non-taxable dollars paid up front versus taxable dollars later on? No, we didn't have anything like that in the record. In the record, though, we do have the government's OPM people saying that they're having a very difficult time retaining workers in Hawaiian Alaska or attracting workers to Hawaiian Alaska. Counsel, one last question. You said that it was clear that the right to travel would apply to the federal government, but you also said it was clear that it was a different analysis. So what test do we apply to the federal government? There would be a two-part test. One is the federal government, like in signs, they have already decided that the federal government can't empower the states to violate the right to travel. And the second would be that the federal government can't identify, without a compelling governmental interest, a benefit based on the identity of the state in which somebody resides or works. Thank you very much. Thank you. We'll hear from opposing counsel. May it please the Court, Michael Raab from the Department of Justice, appearing on behalf of the Apollese. Are you one of those guys that's getting locality pay? Locality pay, Your Honor. Because you're from Washington. You're not moving to Honolulu anytime soon. As beautiful as it is, I have no present intention to move. Look around, it's a gorgeous island. It is indeed, Your Honor. But Congress has broad latitude to determine how much to pay federal employees. The constitutional right to interstate travel does not encompass a right to travel to another state, remain a federal employee, and be paid under the same formula or system. Isn't that sort of the same argument that, what was the opinion that said, you know, you have a right to speak, but you don't have a right to be a policeman? No, Your Honor. That was Justice Holmes, I believe. He was wrong. He was wrong in Buck v. Bell, too. And he was wrong in this case. Otherwise, he was right in everything he said. However, Your Honor, we're not saying that the doctrine of unconstitutional conditions doesn't apply to the government as employer. Indeed, as you point out, in that case, in the First Amendment context, there are important restrictions on the government as employer. Why is the right to travel the same? Because there's absolutely no support in the case law for such a proposition and it would wreak havoc on Congress. We make case law here all the time. You're right, Your Honor, and you'd be in conflict with the Supreme Court. We'd have to make case law in many of them, right? Whether we're for you or we're for your opposing counsel. In order to decide. There's no case on point. We're going to be riding on a relatively clean slate and if we're going to do what you suggest, there are many avenues of escape here but the avenue that you're advancing is the right to travel assuming it applies to the federal government or conceding it applies to the federal government doesn't apply to the federal government as employer. That's the particular route you're pursuing. Exactly. And in any event, you're not riding on a completely clean slate. The Supreme Court in Califano v. Torres made clear that as it assumed for purpose of that case that one had as free a right, an unqualified right to travel to Puerto Rico as it did to any other state in connection with a federal statute that restricted the SSI program so again, a program the contours of which excluded the area to which the individuals wanted to travel, Puerto Rico and completely excluded it. Wasn't that part of the foreign travel case? No, the court made clear in that case that it wasn't deciding in the cases of foreign travel it was making clear that it was assuming for purposes of that case that one had the same unqualified right to travel to Puerto Rico as one did to any of the 50 states and the court made clear emphatically that there was no problem with Congress treating that area, Puerto Rico, differently from any of the other states and as the district court quite correctly concluded that case is on all fours in relevant respects with this one That wasn't an employment case, right? That was not an employment case but Congress has even broader latitude But you were pursuing the line of argument that said it doesn't apply to the federal government That's your particular argument you were making So then you bring in Califano which isn't an employment case I'm having a little trouble figuring out how that supports you Because we think it falls off for sure from Califano The court made clear there that Congress has very broad power to dole out benefits to private citizens as its capacity as purveyor of benefits to private individuals Even more so, does Congress have broad power to determine how much to pay in terms of benefits to its employees And this court has made clear as well that government as employer has broader power in those respects So there's no... The court doesn't need to, as we point out in our brief delve into too deeply just to what extent the right to travel applies to the federal government Because this case follows directly from the logic of the Supreme Court's decision in Califano v. Torres It also follows from the Eighth Circuit's decision in the National Senior Federation case that we cite in our brief as well Unless the court has any further questions we ask that the judgment be affirmed on the basis of the district court's reasoning Thank you You took more than your time but if you'd like a minute for rebuttal you may take it You want to address Califano? Califano presented a very different situation where an individual traveling from Connecticut moving to Puerto Rico tried to argue that the benefits he received or she received in Connecticut should be received only by her in Puerto Rico Nobody else in Puerto Rico received this SSI benefit And the court readily dismissed the notion that all Puerto Ricans should be eligible for the benefit in footnote for that decision and stated in that footnote that the right to... that the right to international travel has been considered no more than an aspect of liberty and the court went on to state that Puerto Rico is a territory that has a relationship with the U.S. that has no parallel in our history So the court wasn't looking at the situation we have here where we have two states completely eliminated from receiving a particular benefit And they weren't looking at a state You've said a lot of stuff but I'm having trouble understanding Are you taking issue with the claim that California is an interstate travel case? I'm taking issue... Interstate, that's correct It's an international travel case What do we do with the last paragraph in footnote 6 that says for purposes of this opinion we assume that there is a virtually unqualified constitutional right to travel between Puerto Rico and any of the 50 states of the Union That doesn't sound like an international travel The court was looking at whether or not you can bring the benefit just for yourself to Puerto Rico I understand what the court was looking at but for purposes of this opinion we assume that there is virtually unqualified and in the paragraph that begins the constitutional right of interstate travel is virtually unqualified They sort of bookended that footnote by talking about unqualified rights to interstate travel I think the only way to interpret the decision without making footnote 4 completely meaningless which would not make any sense in a Supreme Court case is that the court was looking at the issue of can you bring the benefit to another state similar to if somebody had a right under the federal government to a particular benefit in their state and they moved to another state can they bring that benefit with them and the court said no but with respect to whether or not they should be treated the same among the 50 states can footnote 4 address this as an international travel case Thank you
judges: Kozinski, Bybee, Callahan